## ATLAS POWDER CO. v. BENSON.

(Circuit Court of Appeals, Third Circuit. March 9, 1923.)

No. 2942.

**1. Explosives ⊂⇒8—Doctrine of res ipsa loquitur applicable to explosives industry.**

That high explosives have become a commercial necessity, and their manufacture a legitimate business, does not relieve a manufacturer of the duty to exercise proper care, commensurate with the dangerous character of the business, in the operation of its plant, and does not absolve it from liability for failure to do so, nor from application of the doctrine of res ipsa loquitur, where it would otherwise be applicable.

**2. Negligence ⊂⇒121 (2)—Doctrine of res ipsa loquitur strictly evidentiary.**

The doctrine of res ipsa loquitur is strictly evidentiary, and supplies in given circumstances, not a presumption of negligence, but evidence of negligence on which recovery may be based.

**3. Negligence ⊂⇒121 (2)—Application of doctrine of res ipsa loquitur.**

Where a defendant was in full control of a business in which an accident occurred, causing an injury, and in the ordinary course of things the accident would not have occurred if proper care was used, the doctrine of res ipsa loquitur applies, and the accident itself, in the absence of other explanation, is evidence of negligence.

**4. Nuisance ⊂⇒53—Question for jury.**

Whether an explosives plant of defendant constituted a nuisance, under P. L. N. J. 1911, p. 498, § 2, giving a table of quantities of explosive which may be made or kept within stated distances from buildings of others, *held* a question for the jury under the evidence.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Action at law by Bernard Benson against the Atlas Powder Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Robert H. Schenck, of Morristown, N. J., Thomas J. Laffey, of Wilmington, Del., and King & Vogt, of Morristown, N. J., for plaintiff in error.

William A. Dolan, of Newton, N. J. (Joseph Coult, Jr., of Newark, N. J., of counsel), for defendant in error.

Before WOOLLEY, Circuit Judge, and WITMER and GIBSON, District Judges.

WOOLLEY, Circuit Judge. An explosion occurred in the plant of the Atlas Powder Company at a place where nitroglycerine and an absorbent material were being mixed as the final operation in the manufacture of dynamite. A building belonging to Bernard Benson, situate about five-eighths of a mile away, was damaged. Benson brought this suit in a state court—later removed to the District Court—charging the Atlas Powder Company by one count of the complaint with negligence in the operation of its plant and by another count with maintaining a nuisance. On issues raised by a general traverse the case went to trial. The plaintiff had a verdict and the case is here on the defendant's writ of error.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The only question raised by this writ is whether there was sufficient evidence of negligent operation or the maintenance of a nuisance to take the case to the jury.

At the trial, ownership of the respective properties and operation of the plant by the defendant being admitted, the plaintiff on the issue of negligence proved the occurrence of the explosion and consequent damages, and rested. The defendant moved for a nonsuit on the ground that the plaintiff had not proved by affirmative and positive evidence that the explosion was due to its negligence. This was true; but the court denied the motion on the ground that the plaintiff had made out a prima facie case of negligence by invoking the doctrine of res ipsa loquitur. Later, on a motion for a directed verdict, and again on this writ, the defendant took the position that this principle of law is not applicable to a case arising out of an explosion where the cause of the explosion is wholly unknown; in other words, that in ordinary course the doctrine does not apply to the explosives industry.

[1] We recognize that high explosives have become a commercial necessity and serve important public interests. Great industries are dependent upon their use and Congress has regarded them as legitimate articles of commerce by providing for their transportation. We realize also the dangers inherently incident to their manufacture and the difficulties of guarding against them. Yet these dangers and difficulties, great as they are, did not relieve the defendant from the duty of exercising care and caution in operating its plant according to the rule, and did not absolve it from liability for failing to do so. Nor was the defendant, by reason of the dangers and problems of manufacturing explosives, excepted from the rules of evidence, by which the performance of its duty of care and caution and its failure to perform that duty are ascertained and determined. Therefore we are of opinion that if the requisite characteristics of the doctrine of res ipsa loquitur were present in this case the doctrine was properly invoked and applied.

[2] The doctrine of res ipsa loquitur has at times been regarded as affording a presumption of negligence in conflict with the general rule that negligence is never presumed but must be affirmatively proved. This is a mistake, for the doctrine is strictly evidentiary and supplies in given circumstances not a presumption of negligence but evidence of negligence on which recovery can be based. It was thus defined by Erle, J., in Scott v. London Docks Co., 2 Hurl. & C. 596:

"When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

[3] This definition has been termed a legal classic (1 Thomp. Negl. § 15; 20 R. C. L. 187), and was adopted by the Supreme Court in San Juan Light & Transit Co. v. Requena, 224 U. S. 89, 99, 32 Sup. Ct. 399, 56 L. Ed. 680. In order effectively to invoke this principle of law it is essential that it shall appear from the circumstances that the transaction in which the accident occurred was in the exclusive management of the defendant, and all the elements of the occurrence within its control,

and that the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. If there was any other cause apparent to which, in the minds of the jurors, it may with equal fairness be attributed, the doctrine cannot be invoked. East End Oil Co. v. Pennsylvania Torpedo Co., Ltd., 190 Pa. 350, 42 Atl. 707.

Applying this rule to the case at bar it is evident that all the essentials of the doctrine were present and that in its application the plaintiff made out a prima facie case.

But the evidence of negligence, with reference to which a transaction itself speaks, may, like most evidence, be rebutted. Indeed, it is only conclusive "in the absence of explanation by the defendant." Availing itself of this phase of the doctrine, the defendant introduced evidence tending to show that its method of making dynamite was in quantities of one thousand pounds at stated intervals, mixed in well tried machinery, and that its machinery and method were the usual ones employed in the industry and were proper. It did not attempt to show the cause of the explosion—all the men present having been killed—but called a workman who, having a few minutes before removed the last completed batch, said, that when he was in the mixing house there was no dynamite in process of mixing; there was nothing to indicate an impending explosion; and the men were not violating any of the rules or otherwise doing anything they ought not to do. The defendant then moved for a directed verdict in its favor. It now complains that the court erred in denying its motion.

As the record stood before the trial judge, there was in the plaintiff's case evidence of negligence on the part of the defendant under the doctrine we have been discussing; and in the defendant's case there was, in explanation, evidence of due care and caution on its part. But whether the evidence for the plaintiff was overcome by the evidence for the defendant was a question of fact solely for the jury. Therefore we are of opinion that the question was properly submitted.

[4] On the issue of nuisance the plaintiff proved the distance of his building from the defendant's plant, and rested. The defendant moved for a nonsuit on the ground, as we have stated, that the plaintiff had failed to show negligence and on the further ground that he had not shown that the defendant's explosives plant was a nuisance per se. Whether the plaintiff had or had not succeeded in maintaining the nuisance count, the court was right in refusing the nonsuit because the issue on the negligence count was controverted and remained to be decided.

At one time in New Jersey the keeping of gunpowder, nitroglycerine and other explosive substances in large quantities was regarded a nuisance per se. McAndrews v. Collerd, 42 N. J. Law, 189, 36 Am. Rep. 508. But in view of changing conditions the courts of that state have modified this arbitrary rule and promulgated another to the effect that whether the keeping of high explosives in large quantities is or is not a nuisance depends upon the locality, the quantity and the surrounding circumstances. O'Hara v. Nelson, 1 Buchanan, 161. Moreover, the legislature of New Jersey has recognized that under certain circum-

stances the manufacture and storage of high explosives are lawful and has made certain requirements which, when observed, take the manufacture and storage of explosives out of the class of nuisances. P. L. of 1911, p. 497. The statute says:

"No person shall manufacture, have, keep or store explosives except in compliance with this act." Section 2.

The act then gives a "quantity and distance table" showing the quantities of explosives which may lawfully be made or kept within given distances from buildings owned by others. The figures of this table relevant to this case show that quantities from 1,000 to 1,500 pounds may lawfully be kept within 1,060 feet of the building of another.

The quantity of dynamite which the defendant maintains, because of its method of manufacture, was in the mixing house at the time of the explosion was 1,000 pounds. As it could lawfully have this quantity within 1,060 feet of a building owned by another, and as the plaintiff's building which was injured by the explosion was five-eighths of a mile distant, it claims it is well within the statute protecting it from the charge of maintaining a nuisance. As it did not show the quantity of dynamite in the mixing house at the time of the explosion, the plaintiff's testimony on the nuisance issue was, at best, meagre. When the defendant came to its case, in an endeavor to bring itself within the New Jersey statute it produced Hudson Maxim, a noted expert on explosives, who testified that if the quantity of dynamite which exploded was only 1,000 pounds, as contended by the defendant, the structural damage from the explosion was limited to a distance of 530 feet, and that in calculating quantities of dynamite which upon exploding would produce structural damage at greater distances, "you multiply your quantity of explosives by eight every time you double the distance." As the plaintiff's building was admittedly injured by the explosion and as it was about 3,200 feet away, the defendant by this testimony clearly strengthened the plaintiff's case on the question of the quantity of dynamite being manufactured, and on the issue of nuisance. That question was one exclusively for the jury. Therefore the court did not commit error in refusing the defendant's motion for binding instructions.

The judgment of the court below must be affirmed.